FILED
CLERK

11/9/2017 4:41 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

For Online Publication Only

KEYSEAN LATISHA KEYES,

                        Plaintiff,

                -against-

JUDGE QUINN, et al.,

                        Defendants.
----------------------------------------------------------------X

KEYSEAN LATISHA KEYES,

                        Plaintiff,

                -against-

MADELINE SINGAS, et al.,

                        Defendants.
----------------------------------------------------------------X

KEYSEAN LATISHA KEYES,

                        Plaintiff,

                -against-

JOSEPH F. BIANCO, et al.,

                        Defendants.
----------------------------------------------------------------X

KEYSEAN L. KEYES,

                        Plaintiff,

                -against-

JUDGE MERLY BERKOWITZ, et al.,

                        Defendants.
----------------------------------------------------------------X

**MEMORANDUM AND
ORDER TO SHOW CAUSE**

17-CV-3575 (JMA)(SIL)

17-CV-3576 (JMA)

17-CV-3577 (JMA)(AYS)

17-CV-3777 (JMA)

---------------------------------------------------------------X

KEYSEAN L. KEYES,

                  Plaintiff,

         -against-                         17-CV-3778 (JMA)(SIL)

CIVIL SERVICE COMMISSION, et al.,

                  Defendants.
---------------------------------------------------------------X
KEYSEAN L. KEYES,

                  Plaintiff,

         -against-                         17-CV-3792 (JMA)(SIL)

FEDERAL COURT CHIEF JUDGE DORA
IRIZARRY,

                  Defendant.
---------------------------------------------------------------X
KEYSEAN L. KEYES,

                  Plaintiff,

         -against-                         17-CV-3794 (JMA)(SIL)

MERLY BERKOWITZ, et al.,

                  Defendants.
---------------------------------------------------------------X
KEYSEAN L. KEYES,

                  Plaintiff,

         -against-                         17-CV-3901 (JMA)(SIL)

MENTAL HEALTH AND HYGIENE, et al.,

                  Defendants.
---------------------------------------------------------------X

---------------------------------------------------------X

KEYSEAN L. KEYES,

                            Plaintiff,

            -against-                          17-CV-3902 (JMA)(SIL)

NASSAU COUNTY POLICE DEPARTMENT, et al.

                         Defendants.

---------------------------------------------------------X

KEYSEAN L. KEYES,

                            Plaintiff,

            -against-                          17-CV-4022 (JMA)(AYS)

JOANNA SEYBERT, et al.,

                         Defendants.

---------------------------------------------------------X

KEYSEAN L. KEYES,

                            Plaintiff,

             -against-                          17-CV-4230 (JMA)(AYS)

U.S. SUPREME COURT, et al.,

                         Defendants.

---------------------------------------------------------X

KEYSEAN L. KEYES,

                            Plaintiff,

             -against-                          17-CV-4231 (JMA)(AYS)

THE NASSAU COUNTY COURT, et al.,

                         Defendants.

---------------------------------------------------------X

```
--------------------------------------------------------X
```
KEYSEAN L. KEYES,

                              Plaintiff,

              -against-                         17-CV-4804 (JMA)(SIL)

JOHN IMHOF, Commissioner; et al.,

                              Defendants.

```
--------------------------------------------------------X
```
KEYSEAN LATISHA KEYES,

                              Plaintiff,

              -against-                         17-CV-4805 (JMA)(SIL)

NASSAU COUNTY, et al.,

                              Defendants.

```
--------------------------------------------------------X
```
KEYSEAN L. KEYES,

                              Plaintiff,

              -against-                         17-CV-4806 (JMA)(SIL)

CONGRESS, et al.,

                              Defendants.

```
--------------------------------------------------------X
```
KEYSEAN L. KEYES, JEFFREY GRODER,

                              Plaintiffs,

              -against-                         17-CV-5013 (JMA)(SIL)

COUNTY COURT, et al.,

                              Defendants.

```
--------------------------------------------------------X
```

-------------------------------------------------------------X

KEYSEAN L. KEYES, changed name
KEYSEAN L. WILSON,

                       Plaintiff,

                 -against-                               17-CV-5014 (JMA)(SIL)

STANLEY WILSON, et al.,

                       Defendants.
-------------------------------------------------------------X

KEYSEAN L. KEYES, JEFFREY GRODER,
Attorney;

                       Plaintiffs,

                 -against-                               17-CV-5015 (JMA)(SIL)

THE DEPARTMENT OF SOCIAL SERVICES,
et al.,

                       Defendants.
-------------------------------------------------------------X

KEYSEAN L. KEYES,

                       Plaintiff,

                 -against-                               17-CV-5884 (JMA)(SIL)

U.S. DISTRICT COURT, E.D.N.Y., et al.,

                       Defendants.
-------------------------------------------------------------X

KEYSEAN L. KEYES,

                       Plaintiff,

                 -against-                               17-CV-6128 (JMA)(SIL)

COUNTY COURT ATTORNEY JAMES P.
CLARKE, et al.,

                       Defendants.
-------------------------------------------------------------X

```
-----------------------------------------------------------X
```
KEYSEAN L. KEYES,

                     Plaintiff,

          -against-                    17-CV-6129 (JMA)(SIL)

NASSAU COUNTY POLICE HEADQUARTERS.,
et al.,

                    Defendants.
```
-----------------------------------------------------------X
```
KEYSEAN L. KEYES,

                     Plaintiff,

          -against-                    17-CV-6130 (JMA)(SIL)

SHARNETTE V. THOMAS, et al.,

                    Defendants.
```
-----------------------------------------------------------X
```
KEYSEAN L. KEYES,

                     Plaintiff,

          -against-                    17-CV-6132 (JMA)(SIL)

D.A. MADELINE SINGAS, et al.,

                    Defendants.
```
-----------------------------------------------------------X
```
**AZRACK, United States District Judge:**

     *Pro se* plaintiff Keysean L. Keyes ("plaintiff"), a frequent filer in this Court, has filed twenty-four (24) more nonsensical, frivolous *in forma pauperis* complaints during the period June 19, 2017 to October 20, 2017 (the "New Complaints").[1]  Plaintiff has a long history of frivolous litigation in this Court and has already had at least three *in forma pauperis* complaints that were filed while she was incarcerated *sua sponte* dismissed for failure to state a claim upon which relief

---

[1]  On November 3, 2017, plaintiff filed seven new *in forma pauperis* complaints.  Those complaints will be addressed in a separate order.

may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).  *See Keyes v. Nassau Cty. Ct. and Supreme Ct., et al.*, 16-CV-4016; *Keyes v. Sullivan*, 16-CV-4989; *Keyes v. Nassau Cty. Sheriff's Dep't, et al.*, 16-CV-5482; *Keyes v. Nassau Cty. Corr. Facility, et al.*, 16-CV-5483; *Keyes v. The Dist. Att'y, et al.*, 16-CV-5484; *Keyes v. The People of the State of N.Y.*, 16-CV-5485; and *Keyes v. Sullivan*, 16-CV-5486[1]  In addition, given plaintiff's history of frequently filing frivolous and repetitive complaints, the Court's Memorandum and Order dated June 30, 2017 in cases filed by plaintiff in March 2017, *Keyes v. Nassau Cnty. Police Dep't, et al.*, 17-CV-1783 and *Keyes v. The Dep't of Social Svcs., et al.*, 17-CV-1784, warned plaintiff that her "continued filing of incoherent, frivolous in forma pauperis complaints is an abuse of the judicial process" and cautioned plaintiff that if she "persists in this course of action, the Court will require that plaintiff first seek leave of Court before submitting such filings."  *See* Mem. & Order, dated June 30, 2017 at 5-6, filed in cases assigned docket numbers 17-CV-1783 and 17-1784.  Plaintiff was further warned that, because Federal Rule of Civil Procedure 11 applies to *pro se* litigants, "should she file another incoherent, frivolous action, it is within the Court's authority to consider imposing sanctions upon her."  *Id.* (citation omitted.)  Undeterred, plaintiff has continued in this course of conduct.

---

[1] The Court notes that plaintiff filed an additional fourteen (14) *in forma pauperis* complaints during the period October 5, 2016 through November 10, 2016.  (*See Keyes v. Armor Corr. Health, et al.*, 16-CV-5747; *Keyes v. Nassau Cty. Ct., et al.*, 16-CV-5752; *Keyes v. Fed. Dist. Ct., E.D.N.Y., et al.*, 16-CV-5753; *Keyes v. Michael Sposato, et al.*, 16-CV-5755; *Keyes v. Judge David Sullivan, et al.*, 16-CV-5757; *Keyes v. Michael Sposato, et al.*, 16-CV-5990; *Keyes v. Nassau Cty. Sheriff's Dep't, et al.*, 16-CV-5991; *Keyes v. Nassau Cty. Sup. Ct., et al.*, 16-CV-5992; *Keyes v. Edward Mangano*, 16-CV-5993; *Keyes v. David Sullivan*, 16-CV-5994; *Keyes v. Nassau Cty. Ct., et al.*, 16-CV-5995; *Keyes v. Judge David Sullivan, et al.*, 16-CV-6226; *Keyes v. Judge David Sullivan, et al.*, 16-CV-6310; and *Keyes v. The Dep't of Soc. Svcs.*, 16-CV-6311).  By Order dated December 30, 2016 in each case, the Court denied plaintiff's applications to proceed *in forma pauperis* because plaintiff had already accumulated three strikes and was thus barred from proceeding *in forma pauperis*.  Each case has since been dismissed for failure to prosecute because plaintiff did not remit the Court's filing fee.  *See* Order, dated March 28, 2017 in each of the above cases.

Accordingly, the Court grants plaintiff's applications to proceed *in forma pauperis* in each of the New Complaints for the limited purpose of this Order, and, for the reasons set forth below, dismisses the New Complaints and orders plaintiff to show cause, in writing, within thirty (30) days from the date of this Order, why she should not be barred from filing any new actions under the *in forma pauperis statute* without first obtaining the Court's permission.

I. The New Filings

    A.    The June 2017 Filings

On June 13, 2017, while not incarcerated[2], plaintiff filed two (2) new *in forma pauperis* complaints on the Court's Section 1983 complaint form (17-CV-3575 (JMA)(SIL) ("Keyes I") and 17-CV-3577 (JMA)(AYS) ("Keyes II")) and an *in forma pauperis* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (17-CV-3576 (JMA) ("Keyes III")).   Keyes I names as defendants: "Judge Quinn," "Judge Meryle Berkowitz" ("Judge Berkowitz"), "Judge Prager," "Judge David Sullivan," "DA Madeline Singas" ("DA Singas"), and "Christopher Pessisian" ("Pessisian").   Keyes II also names Judge Berkowitz, DA Singas, and Pessisian but also includes U.S. District Court Judges Joseph F. Bianco ("Judge Bianco") and "Joanna Seyebrt" ("Judge Seybert"), U.S. Magistrate Judge Steven I. Locke ("MJ Locke"), Jeffrey Groder ("Groder"), Warren Thurer ("Thurer"), John Imhof, Commissioner of Nassau County Department of Social Services ("Imhof"), Nassau County Sheriff Michael Sposato ("Sposato"), and Erol Sweeney ("Sweeney") as defendants.   Keyes I and Keyes II are both largely indecipherable and incoherent. Plaintiff generally alleges that the judges named in each of these complaints are "racial abuser[s]" and appears to complain that plaintiff was denied housing in 2014, 2015 and 2017 by the

---

[2] Although plaintiff filed these actions in person at the Central Islip courthouse, the only address plaintiff provided for herself on Keyes III is 100 Carman Avenue, East Meadow, New York, which is the address of the Nassau County Correctional Center.

Department of Social Services.   Plaintiff also seeks to challenge an open indictment against her pending under New York State Supreme Court, Nassau County – Criminal Term Index No. 01557N-2015.[3] Further, plaintiff generally claims that the remaining defendants committed "racial profiling."   (*See generally*, Keyes I and Keyes II.)

On the same date that she filed Keyes I and Keyes II, plaintiff, who is no longer incarcerated, filed Keyes III in person at the Court.  Keyes III is an *in forma pauperis* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and names Judge Berkowitz, DA Singas, New York Attorney General "Eric Sniederman [sic]" ("NY AG Schneiderman") and Assistant Attorney General in Charge of the Nassau County Regional Office Valerie Singleton ("Assistant NY AG Singleton") as respondents.  The petition seeks to challenge the on-going criminal case pending under Index No. 01557N-2015.

On June 23, 2017, plaintiff filed, in person, an *in forma pauperis* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (17-CV-3777 (JMA) ("Keyes IV")) and three (3) new *in forma pauperis* complaints (17-CV-3778 (JMA)(SIL) ("Keyes V"), 17-CV-3792 (JMA)(SIL) ("Keyes VI"), and 17-CV-3794 (JMA)(SIL) ("Keyes VII")).  Keyes IV names Judge Berkowitz, Judge Quinn, Judge Sullivan, Judge Prager, Groder, and DA Singas as respondents and also seeks to challenge the on-going criminal case pending under Index No. 01557N-2015.  Although plaintiff filed Keyes IV in person, she provides only the address of the Nassau County Correctional Center as her address of record.   Although the petition is largely incoherent, it appears that Keyes was

---

[3] According to the information maintained by the New York State Office of Court Administration, plaintiff pled not guilty and is awaiting trial on a three count indictment charging plaintiff with, *inter alia*, a violation of New York Penal Law § 120.05(3) Assault in the Second Degree.  *See* https://iapps.courts.state.ny.us/webcrim (last visited on Oct. 24, 2017).

taken to Mid-Hudson Hospital for a psychiatric examination following her arrest in July 2015 and seeks to challenge that detention, claiming that she was held only because she is a Black woman.

Keyes V includes Groder as a plaintiff in the caption (although he has not signed the complaint) and names the Civil Service Commissioner, "Judge Joseph Bliaco," "Male White Court Security Officer Macalligion," "Female White Court Security Officer McCallion," "Male White Court Security Officer Kouril," "Male White Court Security Officer Fleming," "Unknown Male White Court Security Officer," and "Pro Se Clerk Cassie".   Plaintiff generally alleges that she "is a victim of racial abuse and racial profiling in Nassau County and Suffolk County" and appears to complain that she was required to: (1) pass through the metal detector at the entrance to the Federal Courthouse; and (2) surrender her cell phone upon entering the building.   Plaintiff asserts that the officers insisted she had a weapon "due to me being a color female Black."

Keyes VI is brought against a single defendant, "Federal Court Chief Judge Dora L. Irrizary ("Chief Judge Irizarry"), and, like plaintiff's other filings, is largely indecipherable and incoherent. It appears that plaintiff seeks to hold Chief Judge Irizarry liable for plaintiff's homelessness, and claims that "Federal employees have [indecipherable] deprived me a home."   According to the complaint, "when welfare is denied the Federal Court have the responsibility to intervene" and that plaintiff's right to "life liberty and the pursuit of happiness" was denied when Federal court employees allegedly declined to make copies for plaintiff.

Keyes VII names Judge Berkowitz, Judge Sullivan, Judge Quinn, DA Singas, Imhof, Groder, and Pessisian as defendants and generally alleges that the defendants are racially abusing plaintiff.  Plaintiff alleges in conclusory fashion that the defendants "are responsible for disobeying the law" and claims that they have "committed acts of prejudice base of color of my skin, Black."

On June 29, 2017, plaintiff filed two (2) new *in forma pauperis* complaints (17-CV-3901 (JMA)(SIL) ("Keyes VIII") and 17-CV-3902 (JMA)(SIL) ("Keyes IX")).  Keyes VIII names "Mental Health and Hygiene," Ronald Lungo ("Lungo"), Armor Health Services ("Armor"), the Nassau County Jail, Sposato, Ed Mangano ("Nassau County Executive Mangano"), "Dr. Maneddi," and Judge Berkowitz as defendants and, like her other submissions, is largely indecipherable and incoherent.  Plaintiff generally alleges "Racist, Racism, [and] Racial Abuse" against the defendants and appears to challenge the open indictment given that the only relief plaintiff seeks is the dismissal of the criminal case against her.

Keyes IX names the "Nassau County Police Department – Chief of Dept.," the "Hempstead Police Department – Chief of Dept.," the "Nassau County District Court – Chief Judge," Judge Prager, Judge Sullivan, Judge Berkowitz, Judge Quinn, "Court Security Officer Homemis," and "Pro Se Clerk Cassie" as defendants.  After listing the defendants, plaintiff alleges: "All of the above mention[ed] base[d] solely on Racism being a Racist against Color of Black people I am the victim of such abuse."   Although difficult to comprehend, it appears that plaintiff alleges that she was approached by two Federal Court security officers on June 29, 2017 in the computer room in the Clerk's Office following a complaint by a court clerk that plaintiff was "disruptive."  Plaintiff claims that she was harassed by the White Court officers who "harass[ed] me with intent to put fear."  Plaintiff claims that the officers had no reason to approach her, and that the "Court Clerk's did not tell the truth and are untrustworthy people who should be investigated and given a background check and psycoligal [sic] background due to make false accusations to the Court Security officers."   In addition, plaintiff alleges that, [s]ince 2014 when I relocated to Nassau County, I have been a victim of Racial abuse with predominately White people responsible."  Although the complaint in Keyes IX was filed on June 29, 2017, plaintiff describes an incident

11

involving Judge Prager that allegedly occurred on July 11, 2017, after the date of the filing of the complaint. Plaintiff appears seeks to challenge rulings made by Judge Prager in the pending state criminal case. For relief, plaintiff "want[s] the Chief Judge to investigate all my complaints and forward them to Internal Affairs. I want the Court Clerk's and Court Security Officers to be prosecuted for there [sic] actions."

B.     The July 2017 Complaints

On July 6, 2017, plaintiff filed a new *in forma pauperis* complaint (17-CV-4022 (JMA)(SIL) ("Keyes X")). On July 17, 2017, plaintiff filed two (2) new *in forma pauperis* complaints (17-CV-4230 (JMA)(AYS) ("Keyes XI") and 17-CV-4231 (JMA)(AYS) ("Keyes XII")). Keyes X names Judge Seybert, Magistrate Judge Locke, Judge Bianco, Associate U.S. Supreme Court Justice Gorsuch ("Justice Gorsuch"), President Donald Trump ("President Trump"), Judge Berkowitz, Judge Sullivan, Judge Quinn, DA Warren Thurer, Judge Prager, Jeffrey Groder, President Jeremy Travis of John Jay College, Chief Judge Federal, State and City Courts, DA Singas, and Pessisian. Like plaintiff's other filings, Keyes X broadly alleges that the defendants are all racists and seeks to hold each defendant "responsible for being and carrying out racist actions of abuse with intent to cause suffering." (Keyes X at 8.) Keyes XI names the U.S. Supreme Court, Nassau/Suffolk Law Services, Douglas Ruff, Jeffrey Siegal, Imhof, and Ed O'Neil as Commissioner of the Suffolk County Sanitation Center. Although plaintiff filed this complaint in person,[4] she alleges that she is "being held unlawful imprisonment unable to get a job due to pending case Indictment 1557N-2015." (Keyes XI at 1.) Like her other submissions, plaintiff's rambling and incoherent complaint generally claims that she is a victim of "slavery," is homeless,

---

[4] Plaintiff wrote "homeless" in the space on the form complaint that calls for her address but included the address of the Nassau County Correctional Center as her address on the *in forma pauperis* application that accompanied the complaint.

and seeks to hold the defendants liable for "racial[] abuse" in connection with the alleged denial of welfare and housing benefits by Nassau County.  (*Id*. at 5.)

Keyes XII names the Nassau County Court, ADA S. Milords, DA Singas, Judge Sullivan, Judge Berkowitz, Judge Quinn, Groder, Judge Prager, Legal Aid attorney Tarahan Schecter ("Schecter"), Court Officer Kerri Schemmer, Court Officer William Hess, and an unknown librarian as defendants.  Plaintiff seeks to challenge her pending indictment (1557N-2015) and alleges that the defendants "have committed the crime of slavery by participating in acting out with the intent to cause suffering on the plaintiff, I Keysean L. Keyes."  (Keyes XII at 2.)

C.    The August 2017 Complaints

On August 16, 2017, plaintiff filed three (3) new *in forma pauperis* complaints (17-CV-4804 (JMA)(SIL) ("Keyes XIII"), 17-CV-4805 (JMA)(SIL) ("Keyes XIV") and 17-CV-4806 (JMA)(SIL) ("Keyes XV")), and, on August 24, 2017, plaintiff filed three (3) more new *in forma pauperis* complaints (17-CV-5013 (JMA)(AYS)("Keyes XVI"), 17-CV-5014 (JMA)(AYS) ("Keyes XVII"), and 17-CV-5015 (JMA)(SIL) ("Keyes XVIII")).

Keyes XIII is against Imhof and again seeks to challenge the denial of housing benefits to plaintiff by the Nassau County Department of Social Services ("DSS").  Plaintiff alleges that she was denied housing on August 15, 2017 due to her "being Black" and because of "racism."  (Keyes XIII at 4, 6.)  Plaintiff claims, in wholly conclusory fashion, that Imhof is "liable for being a racist only putting white people in hotels and not Black people in HUD housing shelters."  (*Id*. at 4.)  According to the complaint, "Commissioner John Imhof and the police officers who work for the 3rd precinct are racists people they hate [B]lack people therefore they engaged in crimes of sexual harassment and even make false arrest against [B]lack people."  (*Id*. at 6.)  Plaintiff describes that she was escorted from the DSS by Nassau County police officers on August 15, 2017 and seeks to

hold Imhof responsible for their alleged racism.  (*Id*. at 8.)  For relief, plaintiff seeks to recover "the maximum [amount] for being a racist and engaging in slavery toward a [B]lack woman" as well as "the maximum amount for being living on the street since 2014, 2015 and 2017."  (*Id.* at 7.)

Keyes XIV is against the Nassau County Jail and Sposato and, although plaintiff filed this complaint in person at the Central Islip Courthouse, the only address she provided for herself is that of the Nassau County Jail.[5]  Plaintiff alleges that Sposato is racist and, "[d]ue to me being [B]lack, Sheriff Michael Sposato have destroyed my property, search and seized it on July 11, 2015, and have agreed with the judges at the County Court to have me, Keysean L. Keyes unlawfully imprisoned by the Court by prolonging the Court's dates. . . .  Sposato is a male White who is possibly not fingerprinted and licensed within New York State."  (Keyes XIV at 2 -4.) According to plaintiff, "Sposato don't like [B]lack people and treat them with hate by destroying all property."  (Keyes XIV at 4.)   Like her other submissions, plaintiff seeks to challenge the indictment pending against her under Index Number 1557N-2015.

Keyes XV is against Congress, "Eric Sniderman [sic], Attorney General," Judge Quinn, the U.S. Supreme Court, Chief of the Court, County Court Chief Administrative Judge, DA Singas, Judge Berkowitz, Judge Sullivan, Judge Prager, and Groder, and is largely repetitive of plaintiff's prior submissions.   Although difficult to decipher, it appears that plaintiff seeks to challenge rulings made in the underlying criminal case, including the alleged denial by Judge Quinn of plaintiff's request to change her court-appointed attorney and "to appoint a Black attorney" to represent her.  For relief, plaintiff seeks for the "defendants to pay me the maximum amount of

---

[5] The Court also notes that, in addition to this complaint, plaintiff filed two other complaints on the same day, in person,, Keyes XV and XVI, wherein she provided the address of 200 Fulton Avenue, P.O. Box 582, Hempstead, NY 11550.

money for when the law is broken and violated by judges, attorneys and court officers. Racism is not accepted according to the 13th Amendment. Slavery is abolished and is not to be followed." (Keyes XV at ¶ V.)

Keyes XVI includes plaintiff and Groder in the caption as plaintiffs, although Groder did not sign the complaint and is also included as a defendant. (*See* Keyes XVI at 1.) In addition to Groder, Keyes XVI names as defendants: County Court, Judge Quinn, "Judge Aztec Federal Court," DA Singas, Schechter, Judge Berkowitz, Judge Sullivan, Judge Prager, "DSS Worker Crisis Worker Chris," "Unknown Judge at 99 Main Street District Court in Arraignment who was responsible for sending me to jail on July 11, 2015," Schemmer, Hess, Supreme Court Clerk Paul male White," and "Court Librarian female White." Like the other filings, plaintiff seeks to challenge her on-going state criminal case and alleges that "the judges and attorneys appointed in indictment 1557N-2015 are lying under oath violating the US Constitution Bill of Rights." (Keyes XVI at ¶ III.A.) According to the complaint,

> [t]his claim is made against Congress employees who work with the State and Federal Court. This claim, and the reason for this lawsuit, is against those who violated and disobeyed the law in making the decision and judgment in Indictment # 1557N15-2015. I commence this action to be brought forth to the Court by the judge assigned to this case for racial prejudice on color and base solely on color. The defendants who work in the County Court 262 Old County Rd in Mineola, NY 11501 have all agreed to be racist in this case Indictment 1557N15-2015. The above defendants have come together in an agreement to have me arrested on July 11, 2015 and put in jail from July 11, 2015 to February 2, 2017 with the intent to indict me on charges of assault in the 2nd degree, on charges of resisting arrest and on charges of disorderly conduct. However, the above defendants in there wrongdoing decisions of racial hate crime have all agreed with court officers Kerri Schemmer and William Hess to indict me on the charges mentioned above with the agreement of racist Madeline Singas hating me because I am a Black woman. Ms. Singas agreed not to follow the 13th Amendment slavery abolished but to inform Jeffrey Groder to release me . . . .

(*Id.* at 11-12.)  The incoherent complaint continues in this fashion for a total of thirty-two pages. For relief, plaintiff "want[s] the court officers and the defendants arrested for breaking the law and I want the maximum amount for suffering . . . ."  (*Id.* at 9, ¶ V.)

Keyes XVII is against Stanley Wilson ("Wilson") and Vera Catholise ("Catholise") and is submitted on the Court's Section 1983 complaint form.[6]  Plaintiff alleges that, on June 7, 2017, she "was denied a right to housing at Stanley Wilson's house" and that he "assaulted me on this day."  For relief, plaintiff requests "under Family Law being married to my mom for Mr. Wilson to give me housing and [indecipherable] and pay for storage.  Mr. Wilson is to be told not to hit me in the order of protection."  (Keyes XVII ¶ V.)

Keyes XVIII names Groder in the caption along with plaintiff although Groder did not sign the complaint.  The defendants named in this complaint are:  the Department of Social Services, Imhof, "the attorney Pablo for DSS," "Supervisor of Housing Jamie," Fair Hearing Judge, Supervisor John Neil, "Supervisor Welfare Mr. Laski," "Caseworker Nerkiraie," Christina Housing Specialist," Nassau County Police Officer Scott 2495, Christina Somer, and "Smith Caseworker."  Plaintiff generally claims that all of the defendants have denied her housing and welfare benefits and, as a result, she is homeless.  Plaintiff alleges, in conclusory fashion, that "[t]hose responsible are White people who hate me for being color Black."  (Keyes XVIII at 8.) For relief, plaintiff "ask[s] the judge appointed to this case to see that I receive the maximum amount of money for the racist employees violating the US Constitution, law, and McKinney's law on homeless.  I ask that the Commissioner and his attorney Pablo be charged with negligence

---

[6] Plaintiff alleges in Keyes XVII that she is Wilson's daughter.  (Keyes XVII at 5, 7).  In addition, plaintiff filed another complaint on October 6, 2017 wherein she alleges that Wilson is her father.  *See* October Compl. at 6-7. Catholise is alleged to reside at the same address as Wilson.  (*See* Keyes XVII at 3.)

and other charges of racial abuse and agreeing to racial profiling on August 15, 2017." (*Id.* at ¶ V.)

D.      The October 2017 Complaints

On October 6, 2017, plaintiff filed an *in forma pauperis* complaint (17-CV-5884 (JMA)(SIL) ("Keyes XIX")), and, on October 20, 2017, plaintiff filed four more *in forma pauperis* complaints (17-CV-6128 (JMA)(SIL) ("Keyes XX"), 17-CV-6129 (JMA)(SIL) ("Keyes XXI"), 17-CV-6130 (JMA)(SIL) ("Keyes XXII"), and 17-6132(JMA)(SIL) ("Keyes XXIII"). Keyes XIX is against the U.S. District Court Eastern District of New York, unidentified Federal Court Employees, including Court officers, Court clerks, Court judges and Court lawyers, the U.S. Supreme Court, the Nassau County Court and all of its employees, court officers, court clerks, court judges, court attorneys, and court reporters, as well as DA Singas, Judge Quinn, and Groder. Like her earlier submissions, Keyes XIX is largely illegible and unintelligible. Plaintiff's sixty-five (65) page complaint is submitted on the Court's Section 1983 complaint form, with attachments, and generally claims that all of the defendants, and others not named in the complaint are racists and that plaintiff, who is alleged to be a 45-year-old Black woman, has suffered "slavery" and racism by the defendants as well as other, non-parties, including employees of local police departments, the New York State Department of Social Services, and Trailways Bus Company. The rambling complaint begins with a description of plaintiff's early childhood and of her days growing up in the Bronx, New York, and details for several pages the various jobs her parents worked at, the outfits she wore on holidays such as Easter and St. Patrick's Day, her education and the job she had when she was fourteen-years old. Plaintiff then begins a diatribe that is difficult to follow, but, as the Court can best discern, plaintiff believes that she has become jobless and homeless because she is a victim of a racist society wherein she is unable to find

housing in a shelter or receive food stamps or other benefits from the state Department of Social Services.  Plaintiff also describes that she was indicted in Nassau County under Indictment Number 01557N-2015 and attributes the alleged racism against Blacks, generally, by the Nassau County District Attorney, law enforcement officers, the Courts and jurors as the root of her problems.  Although plaintiff is not presently incarcerated (she appeared at the Central Islip court house on October 6th to file the complaint), the only address she provided for herself is the address of the Nassau County Correctional Center.

Keyes XX is against "County Court Attorney James P. Clarke" ("Clarke"), "Supreme Court Judge Thomas Adam," Judge Quinn, Groder, and Schecter, and complains that Clarke called her "psyco [sic] for no reason on Oct. 10, 2017 after Court."  Plaintiff also complains that Groder filed a motion to withdraw as counsel in the underlying criminal case because plaintiff has filed lawsuits against him.  Plaintiff claims that Groder "does not have a right [to withdraw]" and claims he did so with Judge Quinn's approval.  Plaintiff generally alleges that the defendants "hate Black people," are all "racists" and have "put [plaintiff] into slavery."  Plaintiff also complains that Judge Quinn refused to reassign her criminal case to a Black judge.  Wholly absent from the complaint are any facts in support of plaintiff's broad, and conclusory assertions. For relief, plaintiff seeks to have "the judges' [sic] be remove[d] off this case and . . . the maximum amount for lawsuit against the defendants for violating the law."  Although plaintiff filed Keyes XX in person on October 20, 2017, and is obviously not incarcerated, she insisted on filing a Prisoner Litigation Authorization form and provided the address of the Nassau County Correctional Center as her address below the signature line of the complaint form.  However, plaintiff also included the addresses of the Nassau County Court and the Nassau County Supreme Court as her address of record in addition to P.O. Box 582, Hempstead, NY 11550.

Keyes XXI names as defendants the Nassau County Police Headquarters, the Chief of Police, 3rd Precinct Police Officer Scott Badge # 2495 ("P.O. Scott"), Unknown Police Officer Badge # 3568, and Unknown Police Officer Badge # 2272.   Plaintiff generally alleges that the defendants "have violated the law and have failed to enforce the law."   Plaintiff alleges that she has "been Racially abuse[d] by White people in the Town of Uniondale . . . at the Department of Social Services."   Plaintiff claims that P.O. Scott escorted her from the Department of Social Services "for no reason" and instead of assisting her, plaintiff alleges that P.O. Scott "decided to abuse me Racially and be racist for me being Black.   Plaintiff claims that P.O. Scott and P.O. Badge # 3568 are responsible for her being homeless and did not give her a referral to a shelter. Plaintiff also alleges that she went to the Nassau County Legislative Office and was informed by Police Officer Badge # 2272 "that noone will see me."   Plaintiff further alleges that "I am filing a lawsuit against Nassau County Police Officers, and the Chief of Police, along with Scott Badge #2495, 2598, 2272 for failing to protect me from the judge and attorney who is committing crime by violating the law."   For relief, plaintiff asks that "Internal Affairs take action and bring action against the following persons who are racists: Chief of Police Nassau County, 3rd Precinct P.O. Scott Badge # 2495, P.O. 3568, Police Officer who works in Executive Building Badge #2272."

Keyes XXII is against Sharnette V. Thomas ("Thomas"), who is alleged to be a Home Health Aide who resides in Kingston, New York, and Cameron Turner ("Turner"), who is alleged to be a "labour worker for bakery" in Kingston, New York and who is alleged to be an "eyewitness."   Plaintiff claims that Turner is a racist who violated the Fourth and Thirteenth Amendments "with the intent to put me into slavery."   Although the allegations are difficult to decipher, it appears that plaintiff complains that she entrusted Thomas with some personal property in August 2017 and that Thomas has not returned it to her.   Plaintiff claims that Turner

is an eyewitness.  For relief, among other things, plaintiff requests that Thomas "be put in jail for robbery, search and seizing my property with intent to steal."

Finally, Keyes XXIII is against DA Singas, the U.S. Supreme Court, "Supreme Court Administrative Judge Thomas Adam" ("Admin. Judge Adams"), Judge Quinn, Judge Berkowitz, Judge Sullivan, Nassau County Supreme Court Chief Judge, Judge Prager, and Sheriff Sposato. Again, although plaintiff filed this complaint in person on October 20, 2017, she insisted on filing the Prisoner Litigation Authorization form and has included several addresses as her address of record, including the addresses of the Nassau County Correctional Center, the Nassau County District Court, New York State Supreme Court, Nassau County, and P.O. Box 582, Hempstead, NY.  Like her many earlier complaints, this incoherent and largely indecipherable complaint seeks to challenge the underlying state criminal action against plaintiff, pending under Indictment No. 1557N-2015.  In conclusory fashion, plaintiff alleges that the defendants have violated the Thirteenth Amendment and "hate [] me a Black person" and are responsible for her homelessness.  Plaintiff claims to suffer headaches and has "swollen legs and feet from walking night and day."  Plaintiff alleges that she is "a victim of slavery who is being abused by those who are evil and have hate towards Black people."  Plaintiff claims that the defendants are "responsible for not giving [me] a home or shelter."

<u>DISCUSSION</u>

I.      <u>Sufficiency of the Pleadings</u>

Where, as here, the plaintiff is proceeding *in forma pauperis*, the district court must dismiss the complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "[A] finding of factual frivolousness is appropriate when

the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

"It is axiomatic that district courts are required to read *pro se* complaints liberally, see *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them "'to raise the strongest arguments that [they] suggest [ ],'" *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, 133 S. Ct. 1659 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).

Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

II.    Abstention

Under the *Younger* abstention doctrine, federal courts ordinarily must abstain from exercising jurisdiction over constitutional claims seeking declaratory or injunctive relief concerning:  (1) "state criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, ---U.S.----, 134 S. Ct. 584, 588 (2013); *see Younger v. Harris*, 401 U.S. 37 (1971); *Mir v. Shah*, 569 F. App'x 48, 50 (2d Cir. 2014) (summary order).

Here, to the extent that plaintiff seeks to challenge her on-going state criminal prosecution, this Court must abstain under the *Younger* abstention doctrine.  Accordingly, plaintiff's claims challenging her on-going state criminal prosecution are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(h)(3).

III.    Section 1983 and *Bivens* Claims

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).  In order to state a § 1983 claim, a plaintiff must allege two essential elements.  First, the conduct challenged must have been "committed by a person acting under color of state law."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)

(quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). It is well-settled that a § 1983 claim does not lie against the federal government, its agencies, or employees. *See Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 n. 4 (2d Cir. 1991) (holding that an action brought pursuant to § 1983 cannot lie against federal officers)

Although not precisely parallel, the federal analog to Section 1983 actions against state actors is a *Bivens* action against federal actors. Under *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), an implied cause of action for damages is recognized against federal officers who violate a citizen's constitutional rights. "The only remedy available in a *Bivens* action is an award of monetary damages from defendants in their individual capacities." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007). Because "the purpose of a *Bivens* claim 'is to deter individual federal officers from committing constitutional violations,' there is no right of action against private [parties]." *Storms v. Veterans of Foreign Wars of the United States, Inc.*, No. 15-CV-1038, 2016 WL 6462273, *5 (E.D.N.Y. Nov. 1, 2016) (quoting *Corr. Servs., Corp. v. Malesko*, 534 U.S. 61, 66, 70 (2001)).

Importantly, whether the claim is brought pursuant to Section 1983 or *Bivens*, a plaintiff must allege the personal involvement of each defendant in the unconstitutional conduct alleged in order to state a plausible claim for relief. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (Personal involvement of defendants in an alleged constitutional deprivation "is a prerequisite to an award of damages under § 1983.") Liability under § 1983 cannot be generally imposed on a supervisor solely based on his or her position because there is no *respondeat superior* or vicarious liability under § 1983 or *Bivens*. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is

inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). "Personal involvement" of a supervisor may be established by evidence that a supervisor participated directly in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003).

Here, as is readily apparent and for the reasons set forth below, plaintiff's submissions fail to allege plausible Section 1983 claims and/or *Bivens* claims against any defendant.

A.   Personal Involvement

Plaintiff's submissions wholly fail to allege any conduct or inaction attributable to any particular defendant.  In large part, it appears that plaintiff has named many of the individual defendants simply because of the particular positions they hold.   For example, plaintiff names as defendants:  President Trump, Associate Justice Gorsuch, NY AG Eric Schneiderman, Assistant NY AG Singleton, DA Singas, the Nassau County Civil Service Commissioners, Chief Judge Irizarry, Nassau County Executive Mangano,  the Chief of the Nassau County Police Department, the Chief of the Hempstead Police Department,  Administrative Judge Adams, Jeremy Travis (the President of John Jay College),  Nassau County Department of Social Services Commissioner Imhof, Nassau County Sheriff Sposato, "Supervisor Welfare Mr. Laski," "Supervisor of Housing Jamie," "Supervisor John Neil,"  and Ed O'Neil, the Commissioner of the Suffolk County Sanitation Center.   Wholly absent from plaintiff's submissions are any

allegations that any of these individuals were personally involved in any of the conduct alleged in the complaints. It appears, rather, that these individuals are named in the complaints simply because of the positions they occupy in Federal, State, and local government. Without more, however, plaintiff fails to demonstrate that any of these defendants have had any direct involvement in the alleged deprivation of her civil rights, as is required to hold them liable under Section 1983 or Bivens. *See, e.g., Nunez v. City of New York*, No. 14-CV-4182, 2016 WL 1322448, at *6 (S.D.N.Y. Mar. 31, 2016) (finding that plaintiff failed to allege the personal involvement of the District Attorney in the commission of a constitutional violation); *Poulos v. City of New York*, No. 14-CV-3023, 2015 WL 5707496, at *5 (S.D.N.Y. Sept. 29, 2015) (finding that plaintiff failed to allege the personal involvement of the Police Commissioner in the alleged constitutional violation). Because there is nothing in the complaints to suggest that any of these defendants had any direct involvement with, knowledge of, or responsibility for the alleged deprivation of plaintiff's civil rights, they cannot be liable and the claims against these defendants are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

B.    Private Individuals Do Not Act Under Color of State or Federal Law

As set forth above, liability under Section 1983 and/or *Bivens* lies only where the defendant acts under color of state or federal law, respectively. Here, plaintiff names purely private individuals as defendants, including: her father, Wilson; Catholise who is alleged to reside at the same address as Wilson; a home health care worker named Thomas; a bakery worker named Turner; Groder, plaintiff's criminal defense attorney in the underlying state court criminal prosecution; and Shechter, a staff attorney at the Legal Aid Society of Nassau County Shechter. None of these defendants act under color of state and/or federal law. Even if Groder and Shechter were court-appointed attorneys, plaintiff's Section 1983 claims would still fail

because it is well established that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981); *Rodriguez v. Weprin,*116 F.3d 62, 66 (2d Cir. 1997). Thus, because Groder and Shechter are private actors, they do not act under color of state law.

Private actors, such as Wilson, Catholise, Thomas, Turner, Groder, and Shechter, may be considered to be acting under the color of state law for purposes of Section 1983 if the private actor was a "'willful participant in joint activity with the State or its agents.'" *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Section 1983 liability may also extend to a private party who conspires with a state actor to violate a plaintiff's constitutional rights. *Ciambriello*, 292 F.3d at 323-24. To state a plausible conspiracy claim under Section 1983, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id*. at 324-25 (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).

Here, plaintiff has made no allegations from which the Court could plausibly infer joint action by Wilson, Catholise, Thomas, Turner, Groder, or Shechter with a state actor or that any of these defendants conspired with a state actor to deprive plaintiff of some constitutional right. Thus, there is no legal basis for a Section 1983 claim against Wilson, Catholise, Thomas, Turner, Groder, and Shechter.. Accordingly, plaintiff's Section 1983 claims against those defendants fail as a matter of law, and are dismissed pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii).

C.    Only Individuals May Be Subject to Liability Under *Bivens*

As noted above, "[a] *Bivens* action is a judicially-created remedy designed to provide individuals with a cause of action against federal *officials* who have violated their constitutional rights," *Higazy*, 505 F.3d at 169 (emphasis added) (citing *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981)).   It is long-established that *Bivens* claims may not be brought against the United States, federal agencies, or federal agents in their official capacities.   *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994) (confirming that under *Bivens*, a "direct action against the Government [is] not available," and further declining to recognize a "*Bivens*-type cause of action directly against a federal agency").   Thus, to the extent that plaintiff seeks to bring a *Bivens* claim against the U.S. District Court for the Eastern District of New York, the U.S. Supreme Court, and Congress, such claim is implausible and is thus dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

D.    Section 1983 Claims Against Nassau County

It is well-established that a municipality, such as Nassau County, may be liable under Section 1983 only if the "plaintiff proves that action pursuant to official . . . policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004).  Thus, to impose liability on a municipality, the plaintiff must prove that a municipal policy or custom caused a deprivation of the plaintiff's rights.  *See Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 137 (2d Cir. 1999).

To establish the existence of a municipal policy or custom, the plaintiff must allege (1) the existence of a formal policy officially endorsed by the municipality, (2) actions taken or decisions made by an official with final decision making authority, (3) a practice so persistent and widespread that it constitutes a custom, or (4) a failure by policymakers to properly train or

supervise their subordinates, amounting to a "deliberate indifference" to the rights of those who come in contact with the municipal employees. *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002); *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). "[A] single incident in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks and citation omitted).

Here, as is readily apparent, even affording the *pro se* complaint a liberal construction, there are simply no factual allegations from which the Court may reasonably infer that the conduct of which plaintiff complains was caused by some policy or custom of the County of Nassau. *See Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) ("[A] plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."). Accordingly, plaintiff has not alleged plausible Section 1983 claims against the County of Nassau and such claims are thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) (B)(ii).

E.    The Eleventh Amendment

The Eleventh Amendment bars suits for damages against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity. *Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted). "It is well-established that New York State has not consented to § 1983 suits in federal court and that § 1983 was not intended to override a state sovereign immunity." *Mamot v. Board of Regents*, 367 F. App'x 191 (2d Cir. 2010).

28

The Eleventh Amendment divests this Court of subject matter jurisdiction over any claim for monetary damages against a state actor acting in his official capacity. *See Kentucky v. Graham,* 473 U.S. 159, 169 (1985) ("The Court has held that, absent a waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.").   It is well-established that a suit seeking money damages against a state court judge in his or her official capacity is barred by the Eleventh Amendment. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 521-23 (E.D.N.Y. 2010) (dismissing claims asserted against state court judge in her official capacity on sovereign immunity grounds); *Sassower v. Mangano*, 927 F. Supp. 113, 120 (S.D.N.Y. 1996) (suit against presiding and associate Justices of the Supreme Court of New York, Second Department barred by the Eleventh Amendment).   Thus, plaintiff's claims against Judges Quinn, Berkowitz, Prager, and Sullivan, as well as against DA Singas, ADA Milords, and the "Chief Judge of State Court" must be dismissed because a state official acting in his or her official capacity is protected by sovereign immunity under  the Eleventh Amendment. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).   Accordingly, such claims are thus dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii-iii).

F.    Sovereign and Judicial Immunity

Plaintiff's claims against Chief Judge Irizarry, District Judge Bianco, District Judge Seybert, Magistrate Judge Locke, and the undersigned (District Judge Azrack)[7] must be dismissed for lack of jurisdiction on the basis of sovereign immunity and because the claims are barred by the doctrine of absolute judicial immunity.   Plaintiff's official capacity claims against Federal court employees – "Pro Se Clerk Cassie" and Federal Court Security Officers – are also barred by the doctrine of sovereign immunity.

a.    Sovereign Immunity

It is long established that *Bivens* claims against federal officers in their official capacities are prohibited under the doctrine of sovereign immunity.  *See*, *e.g.*, *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.1994).  Thus, "[a] suit against a federal judge in her official capacity for actions taken by her in connection with her judicial duties is [considered] a suit against the United States," and is barred by sovereign immunity.  *McCulley v. Chatigny*,

---

[7]    Plaintiff names "Judge Aztec Federal Court" as a defendant in Keyes XVI.  The Court understands that plaintiff intends to name the undersigned as a defendant since there is no federal "Judge Aztec."  Although the undersigned appears to be named as a defendant, recusal is not required under the circumstances presented.    Although 28 U.S.C. § 455(b)(5)(i) ("Section 455") requires a judge to "disqualify himself" if "he . . . is a party to the proceeding,"  "[s]everal courts have already rejected the proposition that such a suit against the presiding judge is sufficient to require disqualification under § 455." *United States v. Blohm*, 579 F. Supp. 495, 505 (S.D.N.Y. 1983) (citations omitted).  Indeed, "[i]t is settled that 'a judge is not required to recuse him or herself simply because a litigant before the judge has filed suit or made a complaint against him or her.'"  *Salten v. Cty. of Suffolk*, No. 08-CV-5294, 2012 WL 3260266, at *2 (E.D.N.Y. Aug. 6, 2012) (quoting  *Jenkins v. Sladkus*, No. 04 Civ. 1595, 2004 WL 1238360, at *1 (S.D.N.Y. June 3, 2004)).  Moreover,  the Second Circuit has recognized an exception to Section 455 known as the "rule of necessity," under which  "a judge is qualified to decide a case even if he has an interest in it when the case cannot be heard otherwise." *Tapia-Ortiz v. Winter*, 185 F.3d 8, 10 (2d Cir. 1999).  The rule of necessity applies most obviously where a litigant has sued every federal judge in a district. *See*, *e.g.*, *id.* (applying rule where "[a]ppellant sued all of the active and senior judges serving on this court at the time of his complaint").  Here, given that plaintiff has named the U.S. District Court Eastern District of New York as well as "unidentified Federal Court employees including . . . Court Judges . . .," (*see* the October Complaint), the undersigned is relieved of the obligation to recuse from this case under the rule of necessity.

Notably, plaintiff has already sued both of the active district judges in the Central Islip courthouse as well as the only district judge on senior status who hears newly filed *pro se* cases.  Moreover, plaintiff's pattern of baseless filings against these judges shows that transferring this case to another judge in the Brooklyn courthouse would be fruitless because plaintiff would, in short order, undoubtedly file a suit against any newly assigned judge.

390 F. Supp. 2d 126, 129-30 (D. Conn. 2005) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). "As sovereign, the United States is immune to suit for damages for alleged constitutional torts unless the Government explicitly waives that immunity." *McCulley*, 390 F. Supp. 2d at 130 (citing *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 374 (2d Cir.1999) ("It is well established that in any suit in which the United States is a defendant, a waiver of sovereign immunity with respect to the claim asserted is a prerequisite to subject matter jurisdiction.")).

Insofar as plaintiff seeks to sue Chief Judge Irizarry, District Judge Bianco, District Judge Seybert, Magistrate Judge Locke, the undersigned, *Pro Se* Clerk Cassie and various Federal Court Security Officers in their official capacities, such claims must be dismissed for lack of jurisdiction on the basis of sovereign immunity. Here, plaintiff does not allege a waiver of sovereign immunity and the Court is not aware of any waiver that would permit her to sue any of these defendants in their official capacities for actions taken in connection with the performance of their official duties. Accordingly, plaintiff's claims against Chief Judge Irizarry, District Judge Bianco, District Judge Seybert, Magistrate Judge Locke, *Pro Se* Clerk Cassie and various Federal Court Security Officers are dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B)(iii).

> b.   Judicial Immunity

Federal judges also have absolute immunity from individual capacity suits for damages arising out of judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (*per curiam*); *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) ("It is well-settled that judges generally have absolute immunity from suits for money damages for their judicial actions."). This absolute judicial immunity "is not overcome by allegations of bad faith or malice" or "because the action he [or she] took was in error . . . or in excess of his [or her]

authority." *Mireles*, 502 U.S. at 11, 13 (internal quotation marks and citations omitted); *Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997) (a judge "will be subject to liability only when he [or she] has acted in the *clear absence of all jurisdiction*") (internal citation and quotation marks omitted) (emphasis in original); *see also Pierson v. Ray*, 386 U.S. 547, 554, 87 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). This immunity may be overcome only if a judge is alleged to have taken "nonjudicial actions" or if judicial actions were taken "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12.

The nature of plaintiff's claims against Chief Judge Irizarry, District Judge Bianco, District Judge Seybert, Magistrate Judge Locke, and the undersigned are difficult to comprehend. Plaintiff's claims against these defendants appear to relate solely to the decisions of District Judge Bianco and District Judge Seybert in plaintiff's earlier cases, including the *sua sponte* dismissal of her cases in connection with the decisions on plaintiff's applications to proceed *in forma pauperis*.[8] Deciding motions in a case before the court falls squarely within the judicial function and such conduct is shielded by absolute judicial immunity. Plaintiff's unfocused allegations of improper motives are insufficient to abrogate the defendants' absolute immunity because a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive." *Forrester v. White*, 484 U.S. 219, 227 (1988) (internal quotation marks and citation omitted). Accordingly, Chief Judge Irizarry, District Judge Bianco, District Judge Seybert, Magistrate Judge Locke, and the undersigned are entitled to absolute judicial immunity from suit and the claims against them are dismissed pursuant to 28 U.S.C. § 1915(e)(2) (B)(iii).

---

[8] The Court notes that because discovery has not commenced and no orders were issued by Magistrate Judge Locke in any of her cases, Magistrate Judge Locke is not personally involved in any of the challenged conduct and plaintiff's claims against him fail for this additional reason. *See Farid*, 593 F.3d at 249.

G.  Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that a complaint "must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Essentially, Rule 8 ensures that a complaint provides a defendant with sufficient notice of the claims against it.  *See* FED. R. CIV. P. 8; *Iqbal*, 556 U.S. at 678.  A complaint that is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised," fails to comply with Rule 8.  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).  A complaint that includes only "'labels and conclusions,' . . . 'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual enhancement'" does not meet the facial plausibility standard.  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).  "When a complaint fails to comply with these requirements [contained in Rule 8], the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial."  *Simmons*, 49 F.3d at 86 (citing *Salahuddin*, 861 F.2d at 42).

Here, as is readily apparent, the New Complaints do not set forth any cognizable claims and fall far short of giving fair notice of plaintiff's claims as required by Rule 8(a)(2).   The New Complaints are little more than plaintiff's delusions and, rather than provide factual content, they broadly allege in conclusory fashion that plaintiff's troubles stem from the fact that she is a Black woman who has been victimized and enslaved by racists.   Because plaintiff's vexatious and duplicative submissions are "labyrinthian prolixity of unrelated and vituperative charges that def[y] comprehension" *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (*per curiam*), dismissal is warranted.

IV.     The Habeas Petitions

As noted above, although plaintiff is not in custody, she has filed, in person, a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Keyes III) and a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Keyes IV).  Keyes III is submitted on the Court's form for a "Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody" and names as respondents DA Singas, Judge Berkowitz, NY AG Schneiderman, and  Assistant AG Singleton.  The petition seeks to challenge the on-going criminal prosecution pending under Indictment No. 1557N-2015.  (Keyes III at ¶ 1(b)).[9]  Keyes IV is submitted on the Court's form for a "Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241" and names as respondents DA Singas, Judge Berkowitz, Judge Quinn, Judge Sullivan, Judge Prager, and Groder.  Like Keyes III, this petition also seeks to challenge the on-going criminal prosecution pending under Indictment No. 1557N-2015, and appears to claim that her right to a speedy trial has been violated.  (Keyes IV at ¶ 4(b)).  For relief in both petitions, Keyes requests that the indictment be dismissed.  (Keyes III at 14; Keyes IV ¶ 5.)

"A federal court only has jurisdiction to hear a petition filed pursuant to title 28 U.S.C. section 2254 where the petitioner is 'in custody pursuant to the judgment of a State court.'" *Henry v. Davis*, No. 10-CV-5172, 2011 WL 319935, at *1 (E.D.N.Y. Jan. 26, 2011) (quoting 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States")).   Section

---

[9] Although Keyes alleges that she was convicted on July 10, 2015, that appears to be the date of the incident and arrest.  *See* https://iapps.courts.state.ny.us/webcrim (last visited on Nov. 9, 2017).  According to the information maintained by the New York State Office of Court Administration, plaintiff pled not guilty at her arraignment, has been released on her own recognizance and the case is on the State Court's November 21, 2017 calendar before Judge Quinn.  (*Id.*)

2241 permits habeas corpus review for federal or state prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The habeas corpus statutes, however, cannot be used to "permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court." *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 493 (1973); *see also Younger*, 401 U.S. at 41, 53-54 (federal courts cannot intervene in ongoing criminal proceedings except in the most extraordinary circumstances and upon a clear showing of both great and immediate harm); *York v. Ward*, 538 F. Supp. 315, 316 (E.D.N.Y. 1982) (federal habeas corpus is not to be converted "into a pretrial motion forum for state prisoners") (citation omitted).

Furthermore, a district court may not grant the writ, whether brought pursuant to § 2241 or § 2254 "unless the petitioner has first exhausted the remedies available in the state court or shows that 'there is an absence of available state corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant.'"[10] *Henry*, 2011 WL 319935 at *1 (quoting 28 U.S.C. §§ 2254(b)(1)(A), 2254(b)(1)(B)(i)-(ii)). A federal claim is properly exhausted where it has been presented to the highest state court. *Henry*, 2011 WL 319935 at *1 (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 190-91 (2d Cir. 1982)).

In the instant matter, at the time the petition was filed, and to date, Keyes has not yet been tried, thus she is not in custody pursuant to the judgment of a state court. Accordingly, the petitions are dismissed without prejudice. *See* 28 U.S.C. § 2254; *Henry*, 2011 WL 319935, at *2

---

[10] While 28 U.S.C. § 2241 does not on its face require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief, the Second Circuit has nevertheless imposed such a requirement to accommodate principles of federalism. *See Simmons v. Rotker*, No. 09-CV-7228, 2010 WL 330244 (S.D.N.Y. Jan. 21, 2010) (citing *United States ex rel. Scranton*, 532 F.2d 292, 294 (2d Cir. 1976) ("The check on . . . premature or unwarranted habeas challenges is the requirement that the petitioner shall have exhausted all of [his] state remedies.")).

(dismissing without prejudice petitioner's § 2254 petition where there was no indication that petitioner had been convicted or had exhausted her state court remedies); *see also Lynch v. DeMarco*, No. 11-CV-4708, 2011 WL 6097737, *2 (E.D.N.Y. Dec. 1, 2011) (*sua sponte* dismissing unexhausted § 2254 petition) (citations omitted); *see also* Rule 4 of the Rules Governing Section 2254 Habeas Corpus Cases in the United States District Courts, 28 U.S.C. foll. Sec. 2254 (stating that if it plainly appears from the face of petition that petitioner is not entitled to relief, the judge must dismiss the petition).   Nor has Keyes raised her constitutional claims to the highest state court having jurisdiction, a necessity prior to filing a habeas petition. Accordingly, the petitions for a petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254 are denied without prejudice.  As Keyes has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253.

## V.    Leave to Amend

Notwithstanding the dismissal of the New Complaints, in an abundance of caution, plaintiff is granted thirty (30) days from the date of this Memorandum and Order to Show Cause to file **ONE** amended complaint that coherently and plausibly alleges a valid claim over which this Court has jurisdiction.  The amended complaint must be labeled "Amended Complaint" and bear only the following consolidated docket number: 17-CV-3575 (JMA)(SIL).  Plaintiff must comply with Rule 8 of the Federal Rules of Civil Procedure and provide facts to support a plausible claim against each defendant in the amended complaint.  If plaintiff elects not to file an amended complaint, or neglects to do so within the time allowed, the dismissal of the consolidated complaints shall become final, and judgment shall enter.

VI.     The All Writs Act

Under the All-Writs Act, a federal court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  The All-Writs Act "grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits."  *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999).  Those circumstances include cases where a litigant engages in the filing of repetitive and frivolous suits.  *See Malley v. N.Y. City Bd. of Educ.*, 112 F.3d 69 (2d Cir. 1997) (*per curiam*) (filing injunction may issue if numerous complaints are filed based on the same events); *In re Martin-Trigona*, 9 F.3d 226, 227–28 (2d Cir. 1993).  Such an injunction, while protecting the courts and parties from frivolous litigation, should be narrowly tailored so as to preserve the right of access to the courts.  In addition, the Court must provide plaintiff with notice and an opportunity to be heard before imposing a filing injunction.  *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam).

Plaintiff's twenty-four (24) instant actions, together with her twenty-one (21) prior complaints filed in 2016 (*see* supra 1-2 and at note 1), suggest that plaintiff may file a new, frivolous *in forma pauperis* complaint.  However, plaintiff's continued filing of incoherent, frivolous *in forma pauperis* complaints is an abuse of the judicial process.  The Court has an "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F. 3d 121, 123 (2d Cir. 2000) (internal quotation marks and citation omitted) (alteration omitted).

The Court is especially cognizant of plaintiff's *pro se* status and has attempted to liberally construe the New Complaints.  The Court, however, must also consider plaintiff's litigation

history, together with the fact that she has been warned that her continued filing of incoherent, repetitive *in forma pauperis* complaints relating to her pending state criminal case and homelessness may lead to the entry of an order barring the acceptance of any future complaint based upon such claims without first obtaining leave of Court.  In light of the above, the Court **ORDERS PLAINTIFF TO SHOW CAUSE BY FILING AN AFFIDAVIT WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS MEMORANDUM AND ORDER TO SHOW CAUSE WHY AN ORDER SHOULD NOT BE ENTERED BARRING HER FROM FILING ANY *IN FORMA PAUPERIS* COMPLAINT RELATING TO HER UNDERLYING CRIMINAL CASE AND ANY OF THE OTHER SUBJECTS RAISED IN THE NEW COMPLAINTS.**  Plaintiff is advised that her failure to file an affidavit in accordance with this Order to Show Cause will lead to the entry of an order barring plaintiff from filing any new complaint relating to her underlying criminal case[11] and any of the other subjects raised in the New Complaints and the Court will direct the Clerk of the Court to return to plaintiff, without filing, any such action.  Plaintiff's affidavit shall be clearly labeled "Affidavit in Response to the Order to Show Cause" and shall bear only the docket number of the consolidated action, 17-CV-3575(JMA)(SIL).

   **THE COURT HEREBY BARS PLAINTIFF FROM FILING ANY *IN FORMA PAUPERIS* COMPLAINT WITHIN THE NEXT 30 DAYS RELATING TO HER UNDERLYING CRIMINAL CASE AND ANY OF THE OTHER SUBJECTS RAISED IN THE NEW COMPLAINTS**.  The Court will direct the Clerk of the Court to return to plaintiff, without filing, any such complaint.  The only exception to this temporary injunction is the one

---

[11] This Order is without prejudice to plaintiff properly filing a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 upon conclusion of the criminal action against her and her exhaustion of any constitutional claims in the state court prior to filing a petition here.

amended complaint that plaintiff is permitted to file in docket number 17-CV-3575 (JMA) (SIL). This temporary 30-day injunction is necessary to ease the substantial burden placed on the Court and court staff by the continuous stream of baseless and repetitive complaints filed by plaintiff.[12]

Finally, plaintiff is cautioned that Rule 11 of the Federal Rule of Civil Procedure applies to *pro se* litigants, *see Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and *pro se* litigants . . ."), and should she file another incoherent, frivolous action, it is within the Court's authority to consider imposing sanctions upon her.  <u>See</u> Fed. R. Civ. P. 11.

<u>CONCLUSION</u>

For the reasons set forth above, all of the federal claims in plaintiff's New Complaints are *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B).  In the absence of any remaining federal claims, and given the unavailability of diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over any pendent state law claims, which are dismissed without prejudice to their filing in a state court of appropriate jurisdiction.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

The petitions for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254 (Keyes III and Keyes IV) are denied without prejudice.  As Keyes has not made a substantial showing of the denial of constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253.

In an abundance of caution and given plaintiff's *pro se* status, the Court's grants plaintiff leave to file an amended complaint.  Plaintiff may file **one** amended complaint, bearing only docket

---

[12]  If plaintiff convinces the Court not to enter an order barring her from filing any new *in forma pauperis* complaints relating to her underlying criminal case and any of the other subjects raised in the New Complaints, the Court will consider, to the extent permissible under the law, tolling–for the 30 days covered by the temporary injunction–any relevant statutes of limitations applicable to claims that plaintiff subsequently pursues.

number 17-CV-3575(JMA)(SIL), and it shall be filed within thirty (30) days from the date of this Memorandum and Order to Show Cause.   Plaintiff must comply with Rule 8 of the Federal Rules of Civil Procedure and provide facts to support a claim against each defendant in the amended complaint.  If plaintiff fails to file an amended complaint within the time allowed or to show good cause why she cannot comply, judgment dismissing the action shall be entered.  If submitted, the amended complaint will be reviewed for compliance with this Memorandum and Order to Show Cause and for sufficiency under 28 U.S.C. § 1915(a)(3).

As explained above, the Court **ORDERS PLAINTIFF TO SHOW CAUSE BY FILING AN AFFIDAVIT WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS MEMORANDUM AND ORDER TO SHOW CAUSE WHY AN ORDER SHOULD NOT BE ENTERED BARRING HER FROM FILING ANY *IN FORMA PAUPERIS* COMPLAINT RELATING TO HER UNDERLYING CRIMINAL CASE AND ANY OF THE OTHER SUBJECTS RAISED IN THE NEW COMPLAINTS.**  Plaintiff is advised that her failure to file an affidavit in accordance with this Order to Show Cause will lead to the entry of an order barring plaintiff from filing any new complaint relating to her underlying criminal case and any of the other subjects raised in the New Complaints.  The Court will direct the Clerk of the Court to return to plaintiff, without filing, any such action.  Plaintiff's affidavit shall be clearly labeled "Affidavit in Response to the Order to Show Cause" and shall bear only the docket number of the consolidated action, 17-CV-3575(JMA)(SIL).

Additionally, **THE COURT HEREBY BARS PLAINTIFF FROM FILING ANY *IN FORMA PAUPERIS* COMPLAINT WITHIN THE NEXT 30 DAYS RELATING TO HER UNDERLYING CRIMINAL CASE AND ANY OF THE OTHER SUBJECTS RAISED IN THE NEW COMPLAINTS.**  The Court will direct the Clerk of the Court to return to plaintiff,

40

without filing, any such complaint.  The only exception to this temporary injunction is the one amended complaint that plaintiff is permitted to file in docket number 17-CV-3575 (JMA) (SIL).

Finally, plaintiff is cautioned that Rule 11 of the Federal Rule of Civil Procedure applies to *pro se* litigants, *see Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and *pro se* litigants . . ."), and should she file another incoherent, frivolous action, it is within the Court's authority to consider imposing sanctions upon her.  *See* FED. R. CIV. P. 11.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is DENIED for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to CLOSE these consolidated cases and to leave open only Keyes I, 17-CV-3575(JMA)(SIL) in order to allow plaintiff to file her response to the Order to Show Cause and an amended complaint.

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to Show Cause the *pro se* plaintiff at 200 Fulton Street, P.O. Box 582, Hempstead, NY 11501.

SO ORDERED.

____/s/ (JMA)_____
Joan M. Azrack, U.S.D.J.

Dated:  November 9, 2017
        Central Islip, New York